## Case No. 14,323.

### ULARY v. The WASHINGTON.

[1 Crabbe, 204.] [1]

District Court, E. D. Pennsylvania. April 6, 1838.

SEAMEN — ABSENCE — ENTRY IN LOG-BOOK — BAD PROVISIONS—SUNDAY WORK—RETURN.

1. The law requires that the entry made in the log-book of the absence of a seaman shall show that it was without leave, in order that an innocent departure shall not afterwards be turned into a desertion.

2. To justify a seaman in leaving his ship, in a foreign port, because of the bad provisions sup-

---

[1] [Reported by William H. Crabbe, Esq.]

plied, the case must be very clear in point of fact, and the provisions must be not merely not of the best, but positively bad, and unfit for the men's support.

[See The Balize, Case No. 809.]

3. There is no law to relieve a seaman from working on Sunday.

[Cited in Johnson v. The Cyane, Case No. 7,-381; Philadelphia, W. & B. R. Co. v. Philadelphia & H. de G. Steam Tow-Boat Co., 23 How. (64 U. S.) 219; Pearson v. The Alsalfa, 44 Fed. 358.]

4. If seamen, absent from their ship, in a foreign port, without leave, attempt to return to her by night, not saying who they are or what they want, it is not such a return as will restore to them their right to wages.

This was a libel [against the ship Washington, Oakford, owner, and James Taylor, master] for wages. It appeared that the libellant [Edward Ulary] shipped on board the Washington, at Philadelphia, on the 17th July, 1835, for a voyage to Calcutta and back, at $13 per month; that, on the arrival of the ship at Calcutta, the crew were supplied with fresh provisions, and continued to be so supplied until the 10th January, 1836; that, on Saturday, the 9th January, 1836, they worked at discharging saltpetre from lighters into the ship till nine o'clock at night; that at that hour the mate ordered them to cease working; that they expressed a desire to finish the work that night, rather than leave it till Sunday morning, but were refused permission to do so; that on Sunday morning, when ordered to work, a large portion of them, among whom was the libellant, refused, saying that they would not work on Sunday; that the supply of fresh provisions to all those who refused to work was then stopped; that on Monday they still refused to work, because, they said, they had been made to eat salt provisions, but no complaint was made of the quality of such provisions; that the forecastle was then nailed up, to prevent their leaving the deck; that on Tuesday they left the ship; and that on Friday night a boat came towards the ship, but, on being hailed, changed her course and returned no answer. It was alleged that the libellant and the other seamen who had left the ship on Tuesday were in the boat, and endeavoring to return to the ship, but all that appeared in proof was that, while on shore, they had stated their intention to return to the ship by night, and obtain their clothing. On the day the men left the ship, an entry was made in the log-book that they "ran away;" and on the subsequent days they were noted as being "absent without leave." The Washington arrived at Philadelphia on the 17th June, 1836. The libellant left Calcutta on the 4th February, 1836, reached Philadelphia on the 28th August, 1836, and the libel was filed on the 8th September, 1837. The libellant claimed his full wages for the voyage, less certain credits for cash advanced, and for £2. 1s. earned by him on the passage home.

Mr. Grinnell, for libellant.

We contend, first, that the libellant has not forfeited his whole wages. When a total forfeiture is claimed, a strong and clear case must be made out (Magee v. The Moss [Case No. 8,944]), which has not been done here. The desertion—if any—was involuntary and justifiable; the libellant was not supplied with the usual provisions, and was forced to go on shore to get them; he was treated with cruelty by being forced to remain on deck, and by being required to work on Sunday, without reason. Whitton v. The Commerce [Id. 17,604]; Dixon v. The Cyrus [Id. 3,930]; The Castilia, 1 Hagg. Adm. 59; The Bulmer, Id. 163; The Jane & Matilda, Id. 187; Abb. Shipp. pt. 5, c. 2, § 2; Magee v. The Moss [supra]. Secondly, the libellant was entitled to his full wages, because, as we have seen, he was justified in leaving the ship, or even if not, he made an attempt to return, which was unsuccessful, although the captain was obliged to receive him. Whitton v. The Commerce. Thirdly, the libellant is entitled, at least, to wages up to the time of his leaving the ship; for an assent to his absence may be implied from the fact that no means were taken by the captain to cause his arrest as a deserter. Magee v. The Moss.

Mr. Scott, for respondents.

It is worthy of remark that more than a year had elapsed since the return of the ship before this libel was filed. It is admitted that the entry in the log-book is such as the law requires; that the entry is true has been shown by the evidence; and it only remains to examine whether or no the libellant was justified in leaving the ship. The misconduct of the crew commenced with their positive and mutinous disobedience of orders, and refusal to go to work on Sunday. It cannot be admitted that the men shall be judges of the propriety of an order. Their duty is to obey; if the order is wrongful, they can obtain redress afterwards. This order, however, was not wrongful. We look in vain for any law which exempts the sailor from working on Sunday. The supply of fresh provisions was an indulgence, to which the law gave no claim; and this indulgence was withdrawn when the men ceased to conduct themselves in a way to merit it. The forecastle was nailed up to prevent the men from retiring there in idleness when they should have been at work. So much for the justification. But it is said that the forfeiture of wages, which the men had incurred, was done away with by their attempted return. Their offer to return was not such as to produce this effect; to do so the offer must be clearly made to the captain, and must be accompanied by an offer of amends. Whitton v. The Commerce [supra]; Relf v. The Maria [Case No. 11,692]. It is said by Judge Peters (Whitton v. The Commerce) that the captain is bound

to receive back a mariner who has forfeited his wages, if he offers to return and to make amends. We are constrained to doubt this position. If this is law, it is in the power of seamen to nullify the act of congress, and rid themselves of a forfeiture absolutely incurred. The case of The Commerce did not require this decision, as the captain had actually received the men back, and thereby waived the forfeiture. The point was not in any way material to the case.

Mr. Grinnell, for libellant, in conclusion.

The entry in the log-book was not such as is required to forfeit the wages. It merely stated, on the day that they were first absent, that they "ran away," and afterwards it was said that they were "absent without leave." The entry must, 1st, be made on the day; 2d, show that the absence was without leave. See Act 20th July, 1790, § 5; 1 Story, Laws, 104 [1 Stat. 133]. The law forbidding labor on Sunday applies to seamen, except in case of necessity. Thorne v. White [Case No. 13,989].

HOPKINSON, District Judge. This claim is for wages, for a voyage from Philadelphia to Calcutta and back, or, at least, from Philadelphia to the time when the libellant left the ship at Calcutta. The ship sailed from Philadelphia on the 24th July, 1835, and returned on 17th June, 1836. The libellant left the ship at Calcutta, on the 12th January, 1836, with most of the crew, and never afterwards returned to her. The respondent alleges that the libellant has forfeited his wages; first, by desertion, and second, by disobedient and mutinous conduct. The disobedience and departure from the ship are justified, by the libellant, first, on account of the character of the provisions furnished; and second, because he was required to work on Sunday. As to the departure from the ship. It has been denied that the entries in the log-book are sufficient to forfeit the libellant's wages. All that the law requires is that the entry shall show that the absence was without leave, in order that an innocent departure shall not afterwards be turned into desertion. We find in the log-book the term "ran away," and afterwards an entry that the men were "absent without leave," though not made on the day the men were first absent. Taking the whole book together, however, the second entry is explanatory of the first. But it is not necessary to insist upon the entry in the log-book in order to show that the libellant's wages were forfeited, as the refusal to work, the obstinate disobedience, and the final abandonment of the ship and his duty, will work a forfeiture, unless avoided by sufficient reasons on the part of the libellant.

The libellant has alleged two grounds of justification. First, the character of the provisions furnished; and second, the fact of his being required to work on Sunday.

In regard to the provisions, it appears that they were the same that the crew had used on the voyage out, without complaint, and that the same were used, equally without complaint, by the returning crew. But the case must be extremely clear in point of fact, and the provisions not merely not of the best, but positively bad, and unfit for the men's support, to justify their leaving the ship in a foreign port. They had another remedy; and an extreme case only can justify desertion. I think the libellant has failed to justify himself on this point.

The libellant contends that he was not bound to work on Sunday. There is no law for this position. The nature of the service requires that the men should do so, and they must not be allowed to set themselves up as judges, and refuse to do their duty on such excuses. I think that, on the whole, the libellant has failed to justify his refusing to work, and his leaving the ship.

Has he avoided the forfeiture by his subsequent good conduct, that is, by his repentance, and offer to return to his duty and make amends for the past? It is wholly uncertain whether or no the boat spoken of was their boat, or whether the libellant and his companions were in it. But, supposing that it was they, is this the state of repentance, of return to duty, of tender of amends, intended by the law? To come off at night, to say nothing, not to explain who they were, or what they wanted? I cannot think that this was the proper course. We do not know that they did not come off simply for their clothes. There was no offer to return to duty, merely an effort to come on board; but for what purpose, no one knows. This is not what the law requires. The offending seamen must come in person, must show their repentance for their fault, and their willingness to return to duty. Libel dismissed.